# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOUIS CANTALAMESSA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Case No. 12-1384 |
| TIMOTHY KARPIAK, DOUGLAS | ) |
| BARTOE, and JOSEPH D'ANDREA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

CONTI, Chief District Judge.

## I.    INTRODUCTION

Pending before the court is the June 29, 2015, motion for summary judgment (ECF No. 66) filed by Timothy Karpiak ("Officer Karpiak"), Douglas Bartoe ("Officer Bartoe"), and Joseph D'Andrea ("Officer D'Andrea") (collectively, "defendants"), pursuant to Federal Rule of Civil Procedure 56(a).  Defendants seek judgment as a matter of law with respect to all remaining claims[1] contained in the August 5, 2014, second amended complaint (ECF No. 46) filed by Louis Cantalamessa ("plaintiff").  Plaintiff's remaining claims[2] are for false arrest, retaliation, and conspiracy, in violation of 42 U.S.C. § 1983 and the First and Fourth Amendments to the United States Constitution, as well as claims for slander *per se*, tortious interference with business relationships, and false light, in violation of Pennsylvania state law. This court exercises subject-matter jurisdiction over plaintiff's federal claims pursuant to 28

---

[1] The court's December 18, 2014, minute entry for motion hearing held before Chief Judge Joy Flowers Conti notes that Counts VI – IX were dismissed.  *See* FACTUAL AND PROCEDURAL BACKGROUND, *infra*, at 5.

[2] In his brief in opposition to defendants' motion for summary judgment (ECF No. 81), plaintiff abandons claims at Counts I, II, IV, and V.  *See* FACTUAL AND PROCEDURAL BACKGROUND, *infra*, at 5.  In light of the abandonment, the court will dismiss those claims.

U.S.C. § 1331 (federal question jurisdiction) and § 1343 (civil rights), and over plaintiff's state claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction). For the reasons that follow, defendants' motion for summary judgment will be GRANTED, in part, and DENIED, in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiff is the owner and operator of a vehicle towing service doing business as "Joby's Gulf." (Combined Concise Statement of Material Facts (ECF No. 88) ("C.S.") ¶ 1). Holbert Victor was an employee of Joby's Gulf for over thirty years. (C.S. ¶ 61). On April 12, 2012, Francis Sanner was involved in a roll-over accident while driving a vehicle belonging to Mr. Victor's granddaughter, Brittnie Victor. (C.S. ¶ 51). Mr. Sanner was Ms. Victor's boyfriend at the time. (C.S. ¶ 51). Mr. Sanner contacted Mr. Victor to tow Ms. Victor's vehicle. (C.S. ¶ 52). Mr. Victor rolled the vehicle back onto its wheels and towed it to plaintiff's place of business. (C.S. ¶¶ 53 – 54). The charges for that kind of service were: (1) $100.00 to roll the vehicle onto its wheels; (2) $200.00 to remove the vehicle from the scene of the accident; and (3) $45.00 per day for storage. (C.S. ¶ 56). Based upon the services rendered and the length of time the vehicle was stored at Joby's Gulf, the charges totaled approximately $700.00. (C.S. ¶ 57).

Mr. Victor informed plaintiff that Ms. Victor's car was uninsured. (C.S. ¶ 9). Mr. Victor arranged for plaintiff to take Ms. Victor's car in lieu of paying the towing expenses. (C.S. ¶ 7). Plaintiff believed Mr. Victor had the authority to take such action. (C.S. ¶¶ 7, 10, 15, 61). Plaintiff received $300.00 from the salvage yard for Ms. Victor's vehicle. (C.S. ¶ 62). Plaintiff was to be provided with the title to Ms. Victor's car, as the title was required in order to dispose of the car. (C.S. ¶ 11). The title was not provided; instead, Ms. Victor reported to the Pennsylvania State Police that her vehicle had been disposed of without her consent. (C.S. ¶ 63).

---

[3] Additional facts will be discussed in later sections pertinent only to those facts.

Officer Karpiak is a vehicle fraud investigator for the Pennsylvania State Police, and responded to Ms. Victor's complaint. (C.S. ¶¶ 2, 63). On May 21, 2012, Officer Karpiak interviewed plaintiff at his place of business regarding the disposal of Ms. Victor's vehicle. (C.S. ¶¶ 6, 64). Plaintiff explained that he sent Ms. Victor's car to the salvage yard to be crushed. (C.S. ¶ 7). He was under the impression that he had the authority to do so in light of discussions with Mr. Victor, with whom he had a thirty-year relationship and who had initially towed Ms. Victor's car to plaintiff's place of business. (C.S. ¶¶ 7, 10, 15, 61, 64). Plaintiff did not possess the title to the car, but had been assured that title would be provided. (C.S. ¶¶ 10, 61). Officer Karpiak was not concerned with plaintiff's statement of events. (C.S. ¶¶ 7, 13, 65, 68). Officer Karpiak informed plaintiff that in light of the decision to have Ms. Victor's car disposed of before obtaining title, he would be charging plaintiff with a felony. (C.S. ¶ 12).

Mr. Victor reached out to Officer Karpiak to explain his version of the events. (C.S. ¶ 71). Mr. Victor informed Officer Karpiak that the disposal of Ms. Victor's vehicle was his fault. (C.S. ¶ 71). Nonetheless, Officer Karpiak filed charges against plaintiff on June 15, 2012, asserting violations of 18 PA. CONS. STAT. § 3921(a) (theft by unlawful taking or disposition), and 75 PA. CONS. STAT. §§ 1162 (transfer to vehicle salvage dealer) and 7116 (fraudulent removal of vehicle from garage). (C.S. ¶¶ 16, 73). Officer Karpiak subsequently contacted plaintiff to request that he appear before the local magistrate for the formal reading of the charges, but due to a doctor's appointment, plaintiff was allowed to instead appear on June 18, 2012. (C.S. ¶ 17). Following the formal reading of charges before the magistrate, plaintiff proceeded to the booking center to be fingerprinted and photographed. (C.S. ¶¶ 18 – 19, 74). Throughout this process, plaintiff was never handcuffed, placed in a police vehicle, placed in a

holding cell, or placed under house arrest.  (C.S. ¶ 21).  Plaintiff was instead released on his own recognizance.  (C.S. ¶ 22).

The Pennsylvania State Police maintain a list of approved towing services in the event that a vehicle must be removed from a roadway.  (C.S. ¶¶ 28 – 29).  Field Regulation ("FR") 6-2 describes the process for application to the list, and the criteria for inclusion.  (C.S. ¶¶ 28 – 29).  Plaintiff's business had been on this list; however, following the filing of criminal charges against him, plaintiff received an official letter from Officer Bartoe indicating that plaintiff's business was being removed from the list, effective June 20, 2012.  (C.S. ¶¶ 30, 84).  Officer D'Andrea oversaw the towing list with Officer Bartoe.  (C.S. ¶ 80).  Officer D'Andrea informed plaintiff that plaintiff could reapply upon resolution of the criminal charges.  (C.S. ¶¶ 80, 83).

Plaintiff appeared for his preliminary hearing before the magistrate on July 17, 2012.  (C.S. ¶¶ 27, 77).  The district attorney's office did not have a representative present, and the magistrate would not grant a continuance.  (C.S. ¶ 24).  Officer Karpiak presented the case against plaintiff, and Ms. Victor was asked to testify.  (C.S. ¶¶ 25, 78).  Mr. Victor and plaintiff also testified.  (C.S. ¶¶ 58, 78).  The hearing concluded with the magistrate's dismissal of all charges for the state's failure to establish a *prima facie* showing of any of the charged offenses.  (C.S. ¶¶ 27, 78).

 Following the dismissal of the criminal charges against plaintiff by the magistrate, plaintiff applied for reinstatement of his business to the tow list.  (C.S. ¶ 85).  Plaintiff's application was denied.  (C.S. ¶ 85).  Plaintiff filed his initial complaint against Officer Karpiak in this court on September 25, 2012.  (ECF No. 1).

On January 17, 2014, Bernie Kasievich, the owner of a competing towing business, placed an advertisement in the local newspaper requesting information from disgruntled former

customers of plaintiff's business regarding any improper salvage of their vehicles without consent. (ECF No. 69-1 at 43; C.S. ¶ 38). On January 29, 2014, plaintiff filed an amended complaint adding Officer Bartoe as a defendant. (ECF No. 25). On February 18, 2014, approximately one month after the advertisement was placed, Officer D'Andrea and Mr. Kasievich spoke by telephone. (C.S. ¶¶ 45, 97). There were two more calls between these individuals on February 27 and March 1, 2014. (C.S. ¶¶ 101, 104). The subject matter of these calls is debated, but the calls are the only record of contact between Mr. Kasievich and Officer D'Andrea at that time.

A second amended complaint was filed by plaintiff on August 5, 2014, adding Officer D'Andrea and Mr. Kasievich[4] as defendants. (ECF No. 46). At a December 18, 2014, motion hearing before this court, Count VI (*Id.* at 23 – 26) of plaintiff's second amended complaint was dismissed, without prejudice, as against defendants. Counts VII – IX (*Id.* at 26 – 30) were dismissed as against defendants in their official capacities as Pennsylvania State Police. Following the close of discovery, defendants filed their motion for summary judgment on June 29, 2015. (ECF No. 66). On September 28, 2015, plaintiff filed his brief in opposition to defendants' motion for summary judgment (ECF No. 81) in which he abandons his malicious prosecution claims at Counts I and II (ECF No. 46 at 12 – 17) of his second amended complaint, and abandons his claims at Counts IV and V (*Id.* at 19 – 23) as against Officers Karpiak and Bartoe. The matter is fully briefed (ECF Nos. 67 – 69, 82 – 86, 88), and ripe for disposition.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate if the record shows that there is no genuine dispute with respect to any material fact and the movant is entitled to judgment as a matter of law. FED.

---

[4] Following the filing of the November 20, 2015, stipulation for dismissal, Mr. Kasievich is no longer a party to the present action. (ECF No. 92).

R. C̲ɪᴠ. P. 56(a). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Even then, the dispute over the material fact must be genuine, such that a reasonable jury could resolve it in the nonmoving party's favor. *Id*. at 248–49.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir.2007); *Doe v. Cnty. of Centre, Pa*, 242 F.3d 437, 446 (3d Cir.2001); *Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir.2001); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir.1999). A court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir.1998).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986). The summary judgment inquiry asks whether there is a need for trial – "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Liberty Lobby*, 477 U.S. at 248 – 49.

The burden of showing that no genuine issue of material fact exists rests initially on the party moving for summary judgment. *Celotex*, 477 U.S. at 323; *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir.1996). The moving party may satisfy its burden either by producing evidence showing the absence of a genuine issue of material fact or by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (citing *Celotex*, 477 U.S. at 325). A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more of those elements. *Celotex*, 477 U.S. at 322 – 23. Once the movant meets that burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); see *Liberty Lobby*, 477 U.S. at 247 – 48; *Celotex*, 477 U.S. at 323 – 25. If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law. *Liberty Lobby*, 477 U.S. at 249.

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather

must 'identify those facts of record which would contradict the facts identified by the movant.' " *Corliss v. Varner*, 247 F.App'x 353, 354 (3d Cir.2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir.2002)).

## IV. DISCUSSION

Plaintiff asserts two broad categories of claims: those made pursuant to 42 U.S.C. § 1983, and those made pursuant to Pennsylvania law. Under § 1983, plaintiff asserts (1) a claim against Officer Karpiak for false arrest in violation of the Fourth Amendment (Counts I and II (ECF No. 46 at 12 – 17)), (2) a claim against Officer Bartoe for retaliation in violation of the First Amendment (Count III (ECF No. 46 at 17 – 19)), and (3) a claim against Officer D'Andrea for conspiracy to retaliate in violation of the First Amendment (Counts IV and V (ECF No. 46 at 19 – 23)). Plaintiff also asserts claims under Pennsylvania law against defendants in their individual, unofficial capacities for slander *per se*, tortious interference with business relationships, and false light. (Counts VII – IX (ECF No. 46 at 26 – 30)). The court will turn first to plaintiff's § 1983 claims.

### A. *§ 1983 Claims*

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law….

Congress conceived § 1983 as a means of remedying violations of federal constitutional and statutory rights. *Pa. Pharmacists Ass'n v. Houstoun*, 283 F. 3d 531, 534 – 35 (3d Cir. 2002); *see Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). To state a claim under § 1983, a plaintiff is required to

show that an individual acting under color of state law violated the plaintiff's constitutional or statutory rights. *West v. Atkins*, 487 U.S. 42, 48 (1988).

(1) *False Arrest*

In Counts I and II of plaintiff's second amended complaint, plaintiff asserts that Officer Karpiak violated plaintiff's Fourth Amendment rights by falsely arresting plaintiff without probable cause. (ECF Nos. 46 at 12 – 17; 81 at 3 – 9). Defendants counter that Officer Karpiak is entitled to judgment as a matter of law with respect to these claims, because the facts adduced by plaintiff in discovery fail to establish the requisite elements of a false arrest claim. (ECF Nos. 67 at 6 – 7; 84 at 1 – 3). Even viewing the evidence in the light most favorable to plaintiff as the nonmoving party, the court is compelled to agree with defendants.

To prevail on a claim of false arrest under the Fourth Amendment, a plaintiff must establish two elements: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). In order to show that an arrest occurred, the facts need to show that a "seizure" under the Fourth Amendment occurred. *James*, 700 F.3d at 680. An arrest may be considered to constitute a seizure "'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). A plaintiff has not been seized pursuant to a 'show of authority,' unless the plaintiff actually yields to such a showing. *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

Plaintiff argues that when Officer Karpiak arrived at plaintiff's place of business, plaintiff was "seized" as a consequence of Officer Karpiak's conduct. First, plaintiff claims that when

Officer Karpiak arrived, he informed plaintiff that he was under arrest for car theft. (ECF No. 81 at 7 – 10). Second, while being "interrogated," plaintiff stated that he did not feel free to leave or terminate the questioning. (*Id.*). Third, Officer Karpiak ordered plaintiff to appear before a magistrate, stand for the reading of charges against him, and proceed to a booking office for fingerprinting and photographing. (*Id.*). Fourth, plaintiff stated that he was limited to travel within the state without special permission. (*Id*).

In assessing an alleged seizure, the court examines the totality of the circumstances surrounding the seizure objectively, looking not to whether plaintiff *perceived* that he or she was being restricted in his or her freedom of movement, but whether the officer's statements and conduct would have conveyed to a reasonable person that they were not free to terminate the encounter. *James*, 700 F.3d at 680 (citing *Hodari D.*, 499 U.S. at 628; *Bostick*, 501 U.S. at 437). In making this objective determination, courts look to the following factors: "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Incidentally, one circumstance that has been repeatedly held not to be a seizure is when an officer approaches a plaintiff to "ask questions or make requests," even if the officer is insistent. *Id.* at 681 (citations omitted).

Here, there were no allegations of an intimidating presence, any physical touching, any display of a weapon, any order to accompany Officer Karpiak to the police station, or any threat of arrest if plaintiff did not answer Officer Karpiak's questions. *James*, 700 F.3d at 682 (citing *Mendenhall*, 446 U.S at 554). Plaintiff's own testimony is equivocal, at best, regarding whether Officer Karpiak said anything approximating that plaintiff was "under arrest." In response to

questioning, plaintiff testified at his deposition that "I don't remember exactly if he said arrest." (ECF No. 83-1 at 4). Plaintiff did readily admit that he considered being arrested to mean that "you're handcuffed," and that throughout the duration of his interaction with Officer Karpiak, he was never handcuffed. (ECF No. 69-1 at 33).

The Third Circuit Court of Appeals has established that "where plaintiffs 'were only issued a summons; were never arrested; never posted bail; were free to travel; and did not have to report to Pretrial Services' they were not subject to a 'seizure' within the meaning of the Fourth Amendment." *Penberth v. Krajnak*, 347 F.App'x 827, 829 (3d Cir. 2009) (quoting *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005)). Plaintiff stated that he was never placed in a police car, was never placed in a holding cell, was never put under house arrest, and was released on his own recognizance. (ECF No. 69-1 at 33 – 34). When asked whether he had any restrictions placed on his travel, or needed to report to the court as to his whereabouts, plaintiff testified: "I don't know if I had to, but I did." (*Id.* at 34). Notwithstanding his own uncertainty regarding travel restrictions, plaintiff recounted specifically inquiring of the court whether it was acceptable for him to leave the country, and being told that he could do so. (*Id.*). In fact, when asked if there were any restraints upon his liberty, plaintiff ultimately replied, "[n]o." (*Id.* at 34).

With respect to court hearings and reporting to the booking office, the fact that plaintiff was required to appear at judicial proceedings in conjunction with being prosecuted is not, in and of itself, a Fourth Amendment violation. *Colbert v. Angstadt*, 169 F.Supp.2d 352, 356 (E.D. Pa. 2001) (citing *Britton v. Maloney*, 196 F.3d 24, 30 (1st Cir. 1999); *Bristow v. Clevenger*, 80 F.Supp.2d 421, 430 (M.D. Pa. 2000); *Johnston v. City of Chester*, 10 F.Supp.2d 482, 490 (E.D.

Pa. 1998)). Plaintiff was permitted to delay the reading of the charges before the magistrate due to a doctor's appointment. (ECF No. 69-1 at 35).

The Third Circuit Court of Appeals has noted that a seizure requires

"coercive pressure from state actors resulting in *significant*, present disruption of the targeted person's freedom of movement. In our view, a seizure typically involves an almost complete restriction of movement – either a laying of hands or a close connection (both temporally and spatially) between the show of authority and the compliance (as when a police officer tells a suspect to get in the back of the squad car but declines to handcuff him)."

*James*, 700 F.3d at 681 – 82 (quoting *Kernats v. O'Sullivan*, 35 F.3d 1171, 1180 (7th Cir. 1994)). Even when viewed in the light most favorable to plaintiff, the court must conclude that no reasonable finder of fact would be persuaded that Officer Karpiak's conduct rose to this level. Plaintiff did not meet his burden of demonstrating the first element of a claim for false arrest. Under those circumstances, the court's analysis of this claim need go no further, and summary judgment will be granted in favor of Officer Karpiak with respect to Counts I and II of plaintiff's second amended complaint.

(2) *Retaliation*

In Count III of plaintiff's second amended complaint, he claims that Officer Bartoe violated his First Amendment rights by barring plaintiff's business from reinstatement to the Pennsylvania State Police tow list, despite the resolution of criminal charges in plaintiff's favor. (ECF Nos. 46 at 17 – 19; 81 at 10 – 14). Defendants counter that Officer Bartoe explicitly indicated that plaintiff's business remained off the tow list only because the Pennsylvania State Police did not view dismissal of the charges against plaintiff as a final resolution of his case, and because Ms. Victor had not been "made whole" for the loss of her vehicle. (ECF No. 67 at 8 – 13). Defendants assert that there is no evidence to create a causal nexus between the filing of plaintiff's complaint against defendants and his business's exclusion from the tow list. (*Id.*).

It has long been recognized that "'government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts.'" *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Allah v. Seiverling*, 229 F.3d 220, 224 – 25 (3d Cir. 2000)). A § 1983 claim for retaliation in violation of the First Amendment requires a plaintiff to prove that "'an otherwise legitimate and constitutional government act…was undertaken in retaliation for his exercise of [the] First Amendment.'" *Miller v. Mitchell*, 598 F.3d 139, 148 n. 10 (3d Cir. 2010) (quoting *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997)). To make such a showing, a plaintiff must adduce evidence of: "'(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Hammond v. City of Wilkes Barre*, -- F. App'x --, 2015 WL 5915956 at * 1 (3d Cir. Oct. 9, 2015) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). While in most cases the violation of the right to access the courts arises in the prison context, the same principles apply to the present case. *Anderson*, 125 F.3d at 162 (citing *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1177 (3d Cir. 1990)).

At the outset, defendants argue that the court should first consider whether plaintiff's claim implicates a matter of public concern, because plaintiff is allegedly a public employee/independent contractor. (ECF Nos. 46 at 17 – 19; 81 at 10 – 14). Plaintiff counters that because his original complaint was brought against Officer Karpiak due to his belief that he was falsely arrested, and not as an employee with a workplace grievance, it should not matter whether his complaint implicates a matter of public concern. (ECF No. 81 at 10 – 14). The court agrees with plaintiff.

It has been held by the Third Circuit Court of Appeals that a public employee cannot establish a First Amendment retaliation claim if his or her complaint "did not communicate information to the public other than about the specific circumstances of [his or her] own job." *Morgan v. Covington Twp.* 563 F.App'x 896, 901 (3d Cir. 2014). Nonetheless, the present case is distinguishable because plaintiff did not file his initial claim for any job-related purposes, but because he believed that Officer Karpiak had arrested him and charged him with a crime without probable cause. His initial claim was entirely independent of the matter of his business's inclusion on the tow list. As such, it is irrelevant whether or not his initial belief that he was a victim of malicious prosecution and false arrest was a matter of public concern. Plaintiff's resort to the courts for perceived violations of his civil rights is guaranteed by the First Amendment, *Bristow v. Clevenger*, 29 F.App'x 813, 815 (3d Cir. 2002), and "'must be freely exercisable without hindrance or fear of retaliation.'" *Evans v. Lehman*, 1995 WL 82526 at *2 (E.D. Pa. Feb. 28, 1995) (quoting *Millhouse v. Carlson*, 652 F.2d 371, 373 – 74 (3d Cir. 1981)). The first element of plaintiff's claim is satisfied.

The timeline of events as evidenced by the record before the court shows that plaintiff first appeared before the local magistrate on June 18, 2012, for the reading of the charges filed by Officer Karpiak. (C.S. ¶ 17). The letter suspending plaintiff's business from the tow list was issued by the Pennsylvania State Police on June 20, 2012. Plaintiff appeared for his preliminary hearing before the magistrate on July 17, 2012. (C.S. ¶¶ 27, 77). The magistrate dismissed all charges at that time. Immediately after the charges against plaintiff were dismissed, he attempted to contact Officers Bartoe and D'Andrea to have his business reinstated on the Pennsylvania State Police tow list, but was denied reinstatement. (ECF No. 83-1 at 6; C.S. ¶ 85). Officers Karpiak and D'Andrea met with the local district attorney in August, 2012, to request

that the charges against plaintiff be refiled, but the district attorney declined to do so. (C.S. ¶ 86). Following his failure to obtain reinstatement, plaintiff filed a complaint against Officer Karpiak on September 25, 2012, claiming malicious prosecution and false arrest in violation of the Fourth Amendment. (ECF No. 1). An amended complaint was filed on January 29, 2014, in which plaintiff first raised a claim against Officer Bartoe for retaliation in violation of the First Amendment. (ECF No. 25). A second amended complaint was filed on August 5, 2014, at which point claims were added as against Officer D'Andrea and Mr. Kasievich. (ECF No. 46). Despite ongoing requests for reinstatement following the filing of plaintiff's first complaint, plaintiff's business has remained suspended from the tow list. (ECF No. 83-1 at 6). Plaintiff believes that the continued suspension was retaliation for the filing of his civil complaints against defendants.

"To be actionable as a general matter, the alleged retaliatory conduct must have had more than a *de minimis* impact on the plaintiff's First Amendment rights." *Willison v. Yerke*, 604 F.App'x 149, 151 (3d Cir. 2015) (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006); *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003)). With respect to the second element of plaintiff's claim, defendants' denial of reinstatement could arguably deter a person of ordinary firmness from filing a complaint, and would thereby have more than a *di minimis* impact on his or her First Amendment rights. Thus, the evidence of record is sufficient to satisfy the second element of plaintiff's claim for purposes of defeating summary judgment.

The third element of plaintiff's claim requires a showing of causation via (1) "an unusually suggestive temporal proximity between protected activity and the alleged retaliatory action," (2) "a pattern of antagonism coupled with timing," or (3) "evidence gleaned from the record as a whole." *Arneault v. O'Toole*, 513 F.App'x 195, 197 (3d Cir. 2013) (citing *Lauren W.*

*ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).   The evidence of record must

show that a desire to retaliate against plaintiff's exercise of his First Amendment right to access

the courts was *the* cause of Officer Bartoe's conduct.   *Bergdoll v. City of York*, 515 F.App'x 165,

169 – 70 (3d Cir. 2013); *Livingston ex rel. Livingston v. Borough of Mckees Rocks*, 223 F.App'x

84, 88 (3d Cir. 2007).  *See also Hartman v. Moore*, 547 U.S. 250, 256, 260 (2006) (retaliation is

subject to liability as the but-for cause of official action offending the Constitution).

   Presently, the evidence shows that despite immediately seeking reinstatement after the

dismissal of criminal charges, the suspension of plaintiff's business was in effect for over two

months between the dismissal of criminal charges by the magistrate and the filing of plaintiff's

first complaint.   Officer D'Andrea testified that, despite wanting to return plaintiff's business to

the tow list, he did not recommend doing so because Ms. Victor was not made whole for the loss

of her vehicle, and he believed that the Pennsylvania State Police had five years to refile the

criminal charges.   (ECF No. 69-1 at 48, 54, 56 – 57).   Officer D'Andrea indicated that plaintiff's

failure to compensate Ms. Victor for scrapping her car without her consent represented an act of

dishonesty that affected the welfare of Ms. Victor by improperly depriving her of her property –

an ongoing violation of field regulations[5] dictating tow list suspensions.   (*Id.* at 53).   Lieutenant

Jeffrey Fischer, having oversight of the tow list since Officer D'Andrea's departure from his

---

[5] FR 6-2 § 2.07(C) provides six primary justifications for suspension of tow list privileges.   (ECF No. 69-1 at 102 –
03).  The relevant portions relied upon by Officer Bartoe in his deposition testimony are as follows:

   3.      The commission of an act by an owner or manager of a towing service involving
           dishonesty or corruption, when the act directly or indirectly affects the health, welfare, or
           safety of others.   If the act constitutes a crime, conviction thereof in a criminal
           proceeding is not a necessary condition precedent to the suspension.
   …
   6.      Repeated conduct of a nature which, by means of the relationship the service has with the
           Department, tends to demean the public image of the Department.

(*Id.*).

Uniontown post in March 2013, reiterated the same reasons for continued suspension of plaintiff's business. (ECF No. 69-1 at 105 – 12). This evidence weighs squarely against any contention by plaintiff that an inference of retaliatory motive could be drawn from temporal proximity or a pattern of antagonism.

Officer Bartoe also testified that plaintiff's business remained off the towing list because – in spite of the magistrate's dismissal – the Pennsylvania State Police still felt that plaintiff was in the wrong and that Ms. Victor was an uncompensated victim. (ECF No. 69-1 at 77). This testimony is supported by defendants' attempt to have the criminal charges refiled in August 2012. Additionally, Officer Bartoe believed that plaintiff's conduct demeaned the Pennsylvania State Police, and affected the health, welfare, and safety of others, in violation of the field regulations dictating tow list policy and procedure. (*Id.* at 79).

However, there is some equivocation in Officer Bartoe's deposition testimony which presents the court with issues of credibility. Officer Bartoe stated that he was aware that charges would not be refiled against plaintiff after meeting with the local district attorney, yet continued to preclude plaintiff's business from the tow list. (ECF No. 69-1 at 81). When pressed by plaintiff's counsel in his deposition, Officer Bartoe also stated that "[t]here's a pending civil suit so, no, we didn't put him back on." (ECF No. 83-3 at 4). Plaintiff's counsel followed up by asking whether "there is anything in your written rules or regulations which indicates that if an individual sues the trooper involved or the State Police, that you will not therefore – for that reason not put him back on the list?" (*Id.* at 5). Officer Bartoe replied, "[n]o." (*Id.*). Officer Bartoe went on to state that "[s]ince there's pending litigation, it was my decision not to put him back on." (*Id.* at 7). Plaintiff's counsel queried "[s]o the only reason that remains now for not putting him back on is because he sued this trooper, is that right?" (*Id.* at 5). Officer Bartoe

responded "[n]o – well, yeah, he – a pending civil suit, we're not going to put him back on." (*Id.*).

Although plaintiff's suspension was in place well before plaintiff filed his initial complaint, Officer Bartoe's deposition testimony concerning the continuation of the suspension is inconsistent – at once claiming suspension based upon an assertion of plaintiff's criminality and violation of the field regulations, and also based solely upon the existence of plaintiff's civil suit after charges against plaintiff were not refiled. The conflicting testimony presents a close question, particularly in light of the timing of plaintiff's complaints and the continuing denial of reinstatement of plaintiff's business to the tow list. Officer Bartoe's statements – viewed in the light most favorable to plaintiff – could allow a jury to infer retaliatory motive as the cause for Officer Bartoe's continued suspension of plaintiff's business. The court, however, cannot engage in credibility determinations at summary judgment. The present circumstances require a trier of fact to determine whether or not Officer Bartoe continued the suspension of plaintiff's business – after he knew criminal charges would not be refiled against plaintiff – because plaintiff filed suit against various officers of the Pennsylvania State Police. Summary judgment at Count III of plaintiff's amended complaint will, therefore, be denied.

(3) *Conspiracy*

In plaintiff's final § 1983 claims set forth in Counts IV and V of his second amended complaint, he alleges that Officer D'Andrea conspired with Mr. Kasievich to retaliate against him for filing the present action by placing an advertisement in the local newspaper implicating plaintiff's involvement in criminal activity. (ECF Nos. 46 at 19 – 23; 81 at 14 – 17). Defendant responds that plaintiff failed to establish his burden of demonstrating a conspiracy beyond mere speculation and the use of an impertinent, unduly prejudicial affidavit. (ECF Nos. 67 at 13 – 16;

84 at 3 – 5).  The court must conclude that plaintiff did not adduce sufficient evidence of conspiracy to defeat summary judgment.

Establishing civil conspiracy under § 1983 requires a plaintiff to demonstrate "[t]he existence of a conspiracy involving state action," and "[a] deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Gorman*, 947 F.Supp.3d at 526 – 27. "A conspiracy consists of 'a combination between two or more persons to do an unlawful act, or to do a lawful act by unlawful means, or to accomplish an unlawful purpose.'" *Id.* at 527 (quoting *Franklin Music Co. v. Am. Broad. Cos., Inc.*, 616 F.2d 528, 534 (3d Cir. 1979)).  The heart of a conspiracy is an agreement or concerted action between individuals; a plaintiff must point to specific, affirmative record evidence of such to avoid summary judgment. *Savage v. Judge*, 644 F.Supp.2d 550, 561 (E.D. Pa. 2009).

Here, as evidence of a conspiracy, plaintiff points to: (1) Officer D'Andrea's involvement in his suspension; (2) Mr. Kasievich's status as a competitor; (3) Officer D'Andrea's involvement in the failed attempt to refile charges against plaintiff; (4) the placement of an allegedly defamatory advertisement[6] in the local newspaper by a third party allegedly on behalf of Mr. Kasievich on January 17, 2014, over two months after plaintiff filed a motion to amend his complaint to add Officer Bartoe as a defendant; (5) a February 12, 2014, request to depose Officer D'Andrea regarding the advertisement, followed by a February 18, 2014, telephone call between Officer D'Andrea and Mr. Kasievich; (6) another telephone call between Officer

---

[6] The text of the advertisement is as follows:

> LOSE YOUR CAR? Ever had your vehicle towed by Joby's Gulf in Uniontown & your vehicle never got returned & [sic] or had been junked without any legal documentation or notice?  To seek compensation please send your information to Class Action Suit, P.O. Box 160 South Park Pa 15129 or email to towingcompanyfraud@gmail.com. Please include as much information/ documentation as possible [sic] must include the vin number.  Our Staff will contact you.

(ECF No. 83-6 at 10).

D'Andrea and Mr. Kasievich on February 27, 2014, after Officer D'Andrea's February 24, 2014, deposition; (7) a March 1, 2014, telephone call between Officer D'Andrea and Mr. Kasievich; and (8) Officer D'Andrea's friendship with, and alleged favoritism towards, Joseph Ciarocchi – another competitor with plaintiff. (ECF Nos. 81 at 14 – 18; 82 at 5 – 6, 15).

This evidence is unavailing. As an initial matter, plaintiff ignores the fact that Officer D'Andrea was no longer involved with the towing list or criminal charges against plaintiff as of March 2013, as he had since transferred to gaming enforcement at Nemacolin Casino. (ECF No. 69-1 at 52). Plaintiff provided no evidence to show that Officer D'Andrea was aware of the amended complaint adding Officer Bartoe as a defendant, prior to Officer D'Andrea being contacted by his attorney in mid-February 2014, to discuss availability for a second deposition. If Officer D'Andrea was not aware of the amended complaint before the advertisement was submitted for publication, he had no motive for retaliation for the inclusion of Officer Bartoe as a defendant.

While three calls were made between Officer D'Andrea and Mr. Kasievich close to Officer D'Andrea's second deposition, plaintiff provides no evidence of contact by the two individuals prior to, or at the time of, the placement of the advertisement in question. Plaintiff did not present evidence about the subject matter of the conversations during those calls. In his deposition, Mr. Kasievich testified that he did not recall the nature of his conversations with Officer D'Andrea given the passage of time, and did not recall discussing plaintiff, Officer D'Andrea's deposition, or the advertisement. (ECF No. 83-6 at 7 – 8).

Officer D'Andrea did recall some of the content of his telephone conversations, noting that he had initially contacted Mr. Kasievich because Mr. Kasievich had complained to him in the past about improper documentation of vehicles sent for salvage by plaintiff. (ECF No. 69-1

at 64, 68 – 69, 71).  Officer D'Andrea wanted to see if Mr. Kasievich had any information that might help him during his deposition; specifically, a contact person in Harrisburg who reportedly had information about plaintiff's allegedly improper business practices.  (*Id.*).  He was not aware of the advertisement until a friend had pointed it out to him.  (*Id.* at 66).  Officer D'Andrea did not contact Mr. Kasievich by telephone after the three calls in question.  (*Id.* at 72).  Mr. Kasievich denied the involvement of any other parties in the decision to print the advertisement, and stated that he hoped it would steer patrons his way.  (ECF No. 83-6 at 3).

The court finds that, on the record presented, the evidence – direct or circumstantial – is insufficient to suggest a "meeting of the minds" for the purpose of a concerted action to retaliate against plaintiff for adding Officer Bartoe as a defendant in the present case.  *Martin v. Unknown U.S. Marshals*, 965 F.Supp.2d 502, 547 (D. N.J. 2013) (citing *Phillips v. Alsleben*, 2011 WL 817166, at * 11 (E.D. Pa. Mar. 7, 2011)).  While the proximity of calls between Officer D'Andrea and Mr. Kasievich may arouse some suspicion, suspicion is not enough to carry plaintiff's burden at summary judgment.  *Id.* (citing *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991)).  The remainder of plaintiff's proffered evidence is no more suggestive.  No reasonable jury could render a verdict in favor of plaintiff based upon the evidence presented. The court's analysis of this claim for conspiracy to retaliate, in violation of the First Amendment, need go no further, and summary judgment will be granted in favor of Officer D'Andrea with respect to Counts IV and V of plaintiff's second amended complaint.

     *B.* <u>State Claims</u>

     (1) <u>Slander per se</u>

In Count VII of his second amended complaint (ECF No. 46 at 26 – 27), plaintiff claims that a concerted effort by defendants to place the previously discussed January 17, 2014,

advertisement[7] in the local newspaper constituted slander *per se* due to its tendency to blacken his reputation in the community and engender contempt and ridicule. The court is compelled to note that plaintiff elected to abandon his conspiracy claims in Counts IV and V (ECF No. 46 at 19 – 23) as against Officers Karpiak and Bartoe. (ECF No. 81). Evidence sufficient to defeat summary judgment was not adduced by plaintiff to connect either of these defendants to the newspaper article upon which plaintiff now bases his slander *per se* claim. As such, the claim fails as to these defendants.

Similarly, the claim fails as to Officer D'Andrea. As discussed at length by the court, no reasonable jury could conclude – based on the evidence of record – that Officer D'Andrea and Mr. Kasievich conspired to place the local newspaper advertisement. Whatever the contents of the newspaper advertisement may have implied regarding plaintiff's business practices, there is insufficient evidence of record for a reasonable jury to conclude that Officer D'Andrea had a hand in creating it. In light of the dismissal of Mr. Kasievich from the case, there are no remaining parties against whom plaintiff could assert a claim of slander *per se*. The court will grant summary judgment for defendants at Count VII of plaintiff's second amended complaint.

(2) *Tortious Interference with Business Relationships*

As with his claim for slander *per se*, above, plaintiff asserts a claim of tortious interference with business relationships in Count VIII of his second amended complaint (ECF No. 46 at 28 – 29) as against all defendants based upon the placement of the January 17, 2014, advertisement in the local newspaper. As noted, the evidence of record is not sufficient for a reasonable jury to conclude that any defendant had a hand in the placement of the advertisement. Summary judgment will be granted in defendants' favor at Count VIII of plaintiff's second amended complaint.

---

[7] *See* footnote 6, *supra*, at 19.

(3) *False Light*

In Count IX of plaintiff's second amended complaint (ECF No. 46 at 29 – 30), plaintiff claims that the individual and concerted actions of defendants caused great harm to plaintiff's reputation and standing in the community by placing plaintiff's business activities in a false light. For reasons already discussed, any assertion of concerted or conspiratorial activity by defendants will fail. With respect to defendants in their individual capacities, Pennsylvania law imposes liability upon anyone "who publishes material that 'is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 126 (3d Cir. 2014) (quoting *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (1988)). Plaintiff did not put forward evidence that Officers Karpiak, Bartoe, or D'Andrea publicized any allegations of criminal conduct by plaintiff, particularly with respect to the January 17, 2014, advertisement in the local newspaper. For this reason, summary judgment will be granted for defendants at Count IX.

C. *Affidavit of John Stanislaw*

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, defendants moved for the court to strike the September 24, 2015, affidavit of John Stanislaw (ECF No. 83-8) as scandalous and impertinent. (ECF No. 84 at 3 – 5). The motion to strike will be denied as moot, because the court's summary judgment rulings did not rely on this submission. *Foster v. Kraft Foods Global, Inc.*, 285 F.R.D. 343, 350 (W.D. Pa. 2012).

V. CONCLUSION

Based upon the foregoing analysis, plaintiff failed to adduce sufficient evidence to satisfy his burden of establishing false arrest and conspiracy under 42 U.S.C. § 1983, as well as slander *per se*, tortious interference with business relationships, and false light under Pennsylvania law;

however, plaintiff did adduce evidence sufficient for his claim against Officer Bartoe to survive summary judgment.  Accordingly, defendants' motion for summary judgment (ECF No. 66) will be granted for Counts I, II, IV, V, VII, VIII, and IX of plaintiff's second amended complaint with respect to all defendants, and denied with respect to Count III as it pertains only to Officer Bartoe.

An appropriate order will be entered.

*s/ Joy Flowers Conti*
Joy Flowers Conti
Chief United States District Judge

Dated: February 4, 2016
cc/ecf: All counsel of record